UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAVON WOODALL,

    Petitioner,

v.

JEFFERY WOODS,

    Respondent.
                               /

CASE NO. 2:07-CV-14905
HONORABLE NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

**I. Introduction**

This is a habeas case brought by a state inmate under 28 U.S.C. § 2254. Javon Woodall, ("Petitioner"), is currently confined at the Kinross Correctional Facility[1] where he is serving a term of sixteen-to-forty years, a concurrent term of forty-to-sixty months, and a consecutive two-year term. The sentences result from his Wayne Circuit Court convictions for assault with intent to commit murder, M.C.L. 750.83, carrying a concealed weapon, M.C.L. 750.227, and possession of a firearm during the commission of a felony, M.C.L. 750.227b, respectively. Petitioner has filed a *pro se* petition for writ of habeas

---

[1]When petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the Gus Harrison Correctional Facility, but has since been transferred to the Kinross Correctional Facility. The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards v. Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 U.S.C. § 2254. Therefore, the Court substitutes Warden Jeffery Woods in the caption.

corpus claiming that he is incarcerated in violation of his constitutional rights. Respondent, through the Michigan Attorney General's Office, has filed a response, arguing that Petitioner's claims lack merit or are procedurally barred. For the reasons which follow, the petition will be denied.

## II. Procedural History

Petitioner was found guilty after a jury trial of multiple charges, the most serious of which was assault with intent to commit murder. Following sentencing, Petitioner was appointed appellate counsel who filed an appeal by right. Petitioner's brief on appeal raised two claims:

> I. During the court of closing arguments the prosecutor made numerous improper remarks which denied appellant a fair trial.
>
> II. The failure to instruct appellant's jury regarding the lesser offense of assault with intent to do great bodily harm constitutes reversible error.

Petitioner also filed a supplemental pro-se brief, raising an additional four claims:

> III. Was defendant's retained attorney ineffective when he withdrew from the defendant's case at a critical and crucial stage?
>
> IV. Were defendant's trial attorneys ineffective when they failed to have the presentence investigation report disclosed before the sentencing hearing?
>
> V. Did the trial judge violate M.C.R. 6.425 by excluding the PSR disclosure phase from the sentencing hearing?
>
> VI. Did the trial judge deny fundamental fairness by allowing substitute counsel to stand in during critical stage of the proceeding?

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *People v. Woodall*, No.247216 (Mich.Ct.App. June 15, 2004).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court that raised all six claims he presented to the Michigan Court of Appeals. The Michigan Supreme

Court denied leave to appeal. *People v. Woodall,* No. 126721 (Mich.Sup.Ct. December 29, 2004).

Petitioner returned to the trial court and filed a motion for relief from judgment. The motion and the subsequent state court appeal raised two claims:

> I. Appellant was denied his fundamental right to due process as guaranteed under U.S. Const. Ams. V, VI, XIV; Const. 1963 Art. 1, secs. 17, 20, when trial counsel failed to represent appellant from the pre-trial stage through his sentencing stage.
>
> II. Appellant was denied his fundamental right to a fair trial as guaranteed under U.S. Const. Ams. V, VI, XIV; Const. 1963, Art. 1, secs. 17, 20, when the prosecution committed gross misconduct for failing to turn over all court ordered discovery materials.

On April 12, 2006, the trial court issued an opinion and order denying the motion. The court noted the "good cause" and "actual prejudice" standard of M.C.R. 6.508(D)(3), and then it stated:

> It is only when a defendant can demonstrate that a single egregious error, or a combination of minor errors, caused appellate counsel's overall performance to fall below the standard guaranteed by the Sixth Amendment that defendant had fulfilled the "good cause" prong of M.C.R. 6.508. This court finds defendant's claims are wholly without merit and defendant has not established the (sic) appellate counsel was ineffective. Therefore, defendant has failed to meet the stringent burden of M.C.R. 6.508(D). [Opinion and Order, at 2].

Petitioner filed an application for leave to appeal that raised the same claims, but the Michigan Court of Appeals denied it "for lack of merit in the grounds presented." *People v. Woodall*, No. 274073 (Mich.Ct.App. May 8, 2007). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, but leave to appeal was denied "for failure to demonstrate entitlement to relief under M.C.R. 6.508(D)." *People v. Woodall*, No. 134194 (Mich.Sup.Ct. September 24, 2007).

Petitioner has now filed an application for writ of habeas corpus that raises the following claims:

> I. Petitioner was denied his fundamental right to due process as guaranteed under state and federal constitutions, U.S. Const. Ams. V, VI, XIV; Const. 1963 Art. 1, secs. 17, 20, when trial counsel failed to represent him from the pre-trial stage through his sentencing stage of the proceedings.
>
> II. Petitioner was denied his fundamental due process right to a fair trial as guaranteed under the U.S. Constitution when the prosecution committed gross misconduct for failing to turn over all court ordered discovery materials depriving Petitioner of a fair trial. U.S. Const. Ams. V, VI, and XIV.
>
> III. Petitioner was denied effective assistance of appellate counsel and can thereby demonstrate cause and prejudice for failing to present the within claims on direct review.

### III. Facts

The victim, Thomas Saunders, testified at trial that on the afternoon of May 23, 2002, he was riding his bike in the area of Lawton and Webb Streets in Detroit. Petitioner, Chris Watson, Quinton Watson and Valente Hill were performing cement work on a nearby porch.

Two of the men called-out Saunders' name. Saunders waived back but continued to ride his bike. Hill and Petitioner then crossed the street towards Petitioner. Hill stopped thirty or forty feet away, but Petitioner continued to approach Saunders. Petitioner told Saunders that he was tired of chasing him, and then he challenged Saunders about having attempted to flatten the tires on his vehicle. Saunders replied that he did not know what Petitioner was talking about, and that he did not even know Petitioner owned a car.

Petitioner then pulled a handgun from his pocket, stated that he was going to kill Saunders, and fired several shots. Saunders was hit twice in the abdomen and fell from his

4

bike. Petitioner ran up to where Saunders fell, and fired additional shots that hit Saunders in the back and shoulder. Photographs of Saunders' wounds were admitted into evidence. Saunders testified that he had known Petitioner for seven or eight years. He described Petitioner as wearing a green football jersey and dirty jeans at the time of the shooting.

Gary Eggleston testified that he was sitting on his porch forty to fifty feet away from the location of the shooting. He described the perpetrator as wearing a green jersey, but he testified that it was not Petitioner.

Police officers soon arrived and Saunders told one of them that Petitioner had shot him. Officer Robert Barber testified that he arrived at the scene and that the victim was bleeding from multiple wounds. Barber heard Saunders say several times that "Jay" had shot him.

Norman Doss testified for the defense. He stated that he heard the shooting from an adjacent street and was the first person on the scene. He testified that he did not see Petitioner in the area, and that Saunders asked if Doss had seen who had shot him. Doss admitted that he had been good friends with Petitioner for ten years. He also admitted that Chris Watson, Petitioner's boss, had asked him to testify for Petitioner. Saunders testified that before trial he had received an implied threat from Chris Watson. On rebuttal, Saunders testified that Doss was not the man who came to his aid, and that he was certain of it because the individual who had helped him visited him after he returned home from the hospital.

Valente Hill, Petitioner's co-worker, testified for the defense that at the time of the shooting he had left Petitioner and Chris and Quinton Watson at the work-site to purchase snacks at a nearby store. As he walked he saw a man wearing a green jersey argue with

Saunders, shoot him, and then flee. Hill admitted that he was also a long-time friend of Petitioner.

The jury found Petitioner guilty as charged.

At sentencing, Saunders was given an opportunity to address the court. He told Petitioner that "you know from day one that I met you I've always done for you." He described how he was disappointed with Petitioner because he had obtained a job for him, allowed him to bring women into his basement, and tried to look out for him in any way he could.

Petitioner took offense, and during allocution he admitted to shooting Saunders:

> He know what he did to the old lady Tee who he stayed with who I called auntie. He used to rape her and steal her money and stuff - he know what he did. And all that about the car tires and all that stuff he was making up that's why it didn't add up because that ain't what it was about. I'm not about to waste my life over no car tire which he say I shot him for. And all that about calling him uncle and all that ain't nobody going to call him uncle and look up to him as an uncle. He's a crack head from the neighborhood who do wrong to everyone. And like he said, people in the neighborhood is mad at me for what I did because everybody said I'm too bright to be going to prison for shooting him when there was other people out there who wanted to kill him. And I didn't try to kill him I just wanted to scare him, your Honor. Sent. Tr. at 12-13.

The trial court noted that Petitioner's description of the offense contained in the pre-sentence investigation report claimed that Saunders had raped a 92-year-old woman, and that "one day I got stupid and shot him." Sent. Tr. at 14.

## IV. Analysis

### A. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under section 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the

7

state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## B. Procedural Default

Respondent argues that Petitioner's second claim, asserting prosecutorial misconduct for failing to turn-over the victim's medical records, is procedurally defaulted because Petitioner failed to raise the claim during his appeal of right. Respondent also argues that the portions of Petitioner's first claim that allege that his trial counsel was ineffective for his performance at trial are defaulted for the same reason. Petitioner's reply brief asserts that he is nevertheless entitled to relief with respect to these claims under the "cause and prejudice" standard.

Michigan Court Rule 6.508(D)(3) provides that a state court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

In this case, the trial court denied relief under this court rule by finding that Petitioner had not demonstrated good cause on the basis of his ineffective assistance of appellate counsel claim. The Michigan Court of Appeals subsequently denied relief "for lack of merit in the grounds presented," but the Michigan Supreme Court then denied petitioner leave to appeal because petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." Whether the Court construes the Michigan Supreme Court's order as one invoking a procedural default rule or it "looks-through" that order to the order of the trial court, the claims presented in Petitioner's post-conviction review proceeding were denied on the basis of an independent and adequate state-law ground. *Akrawi v. Booker*,

572 F.3d 252, 261 (6th Cir. 2009). The fact that the state trial court found that Petitioner's claims "are wholly without merit" does not lift the procedural bar because that finding was made in the context of rejecting Petitioner's ineffective assistance of appellate counsel claim. *Davie v. Mitchell*, 547 F.3d 297, 313 (6th Cir. 2008); *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

Review of these claims is therefore barred unless Petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violations, or if he can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). In an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Petitioner cannot demonstrate prejudice to excuse his default. "Prejudice, for purposes of procedural default analysis, requires a showing that the default of the claim not merely created a possibility of prejudice to the defendant, but that it worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002) (*citing United States v.*

*Frady*, 456 U.S. 152, 170-71). None of Petitioner's defaulted ineffective assistance of counsel claims involve matters that worked to Petitioner's actual and substantial disadvantage.

Petitioner asserts that his counsel should have objected to comments made by the prosecutor in her closing argument. The prosecutor's statement that the jury should believe Saunders' identification of Petitioner as his assailant over the testimony of Eggleston did not imply that she had any hidden knowledge; it was based on the evidence presented. A prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir.1999). Here, the prosecutor based her argument on the evidence that: (1) Saunders had known Petitioner for seven or eight years; (2) Petitioner shot him from a short distance; (3) Saunders identified Petitioner to a police officer at the scene; and (4) Eggleston and Hill's similarly worded testimony suggested that they had colluded. Trial Tr. II at 164-166. There was nothing improper about this argument and counsel's failure to object did not work to Petitioner's actual and substantial disadvantage.

Petitioner next asserts that his counsel should have obtained medical records of the victim to show his cocaine use and to impeach his testimony that he had a gunshot wound in the neck. He also asserts that the prosecutor erroneously failed to turn-over the medical records. Contrary to Petitioner's allegations, defense counsel attempted to elicit evidence that the victim was a drug-user. During cross-examination of the victim, defense counsel repeatedly asked Saunders about his drug use. Trial Tr. I at 100, 107, 109, 110, 114-115, 121. The trial court allowed defense counsel to enquire about whether Saunders was under the influence of any drugs at the time of the shooting, but it prevented enquiry about

10

whether Saunders had a history of abuse. Trial Tr. I at 110, 115, 121. With respect to the location of the victim's wounds, multiple witnesses, including a defense witness, testified that Saunders had a bullet wound in the neck or was bleeding from his neck. Trial Tr. I at 87; Trial Tr. II at 22-23, 75. Pictures of the actual wounds were admitted into evidence. Trial Tr. I at 83-86, 88-91. Saunders identified one of the pictures as depicting the wound to his neck. Trial Tr. I at 90. Moreover, Petitioner has not proffered any evidence that medical records exist that corroborate his claim. Counsel's failure to cross-examine Saunders with these hypothetical records did not work to Petitioner's actual and substantial disadvantage.

Petitioner next asserts that his trial counsel should have called Chris and Quinton Watson to support his claim that he was still at the work site at the time of the shooting. The trial record indicates that three men were working with Petitioner on the day of the shooting: Chris Watson, Quinton Watson, and Valente Hill. The work site was only a few houses away from the location of the shooting. Petitioner's trial counsel called Hill as a witness. Unlike the Watsons', who had remained at the work site, Hill testified that he left Petitioner at the site and actually witnessed the shooting. Defense counsel specifically indicated to the trial court that he would not be calling Chris Watson as a witness. Trial Tr. II at 60. Saunders testified that Watson had implicitly threatened him before trial. Trial Tr. I at 97-98. And defense witness Doss testified that he testified because Chris Watson had asked him to. Trial Tr. II at 110. Even assuming the Watsons' would have testified favorably to Petitioner - and he has not proffered their affidavits or any other written statements - their testimony would have been cumulative and inferior to Hill's testimony. The decision not to call either Watson therefore did not work to Petitioner's actual and substantial

11

disadvantage.

Furthermore, the Court notes that Petitioner's admission at sentencing that he was in fact responsible for the shooting undermines his allegation that the Chris and Quinton Watson would have testified that he was with them at the work site at the time of the shooting. It also forecloses any argument by Petitioner that he is actually innocent.

Accordingly, Petitioner has not demonstrated that he suffered actual prejudice with respect to any of this defaulted claims or that a fundamental miscarriage of justice would result from a failure to review them. The Court finds that these claims are therefore barred from review.

### C. Ineffective Assistance of Counsel at Sentencing

Petitioner asserts that he was denied his right to the effective assistance of counsel under the Sixth Amendment when his retained counsel withdrew prior to sentencing because he had began employment with the Wayne County Prosecutor's Office. He also asserts that his new counsel performed ineffectively at sentencing. These claims were presented to the state court during Petitioner's appeal of right. The Michigan Court of Appeals rejected them on the merits:

> To establish ineffective assistance of counsel, a defendant must show that counsel's performance was so deficient that counsel was not functioning as an attorney guaranteed by the Sixth Amendment. *People v. Daniel*, 207 Mich.App. 47, 58 (1994). Defendant offers no argument in his brief on how the outcome of the sentencing would have been different had defendant's original attorney represented him at the sentencing hearing. Moreover, the record at sentencing shows that defendant's attorney was familiar with defendant's presentencing investigation report and made several well-informed arguments on defendant's behalf. Defendant was not denied effective assistance of counsel. [Slip Op. at 2.]

Although the Supreme Court has never expressly extended its ineffective-assistance-of-counsel jurisprudence to noncapital sentencing cases, the Sixth Circuit has applied it in that context with regards to reviewing federal convictions on direct appeal. *See United States v. Stevens*, 851 F. 2d 140, 145 (6th Cir. 1988). However, the AEDPA standard of review found in 28 U.S.C. § 2254 (d)(1) prohibits the use of lower court decisions in determining whether the state court decision is contrary to, or an unreasonable application of, clearly established federal law. *Miller v. Straub,* 299 F. 3d 570, 578-579 (6th Cir. 2002). The Ninth Circuit has noted, "[W]hen the Supreme Court established the test for ineffective assistance of counsel claims in *Strickland*, the [Supreme] Court expressly declined to 'consider the role of counsel in an ordinary sentencing, which ... may require a different approach to the definition of constitutionally effective assistance.'" *Cooper-Smith v. Palmateer*, 397 F. 3d 1236, 1244 & n. 39 (9th Cir. 2005)(*quoting Strickland,* 466 U.S. at 686). Because the Supreme Court has not decided what standard should apply to ineffective assistance of counsel claims in the noncapital sentencing context, there is no clearly established federal law regarding ineffective assistance of counsel claims in noncapital sentencing cases, so as to provide Petitioner with a basis for habeas relief on his claim. *Id., See also Davis v. Grigas,* 443 F. 3d 1155, 1158 (9th Cir. 2006).

Even assuming that review of the claim is appropriate, it fails because his appointed attorney did not perform deficiently at sentencing. To the extent that Petitioner asserts that his original trial counsel "abandoned" him and should not have been allowed to withdraw, he was not deprived of his right to counsel. Appointed counsel stated at sentencing that Petitioner's "previous attorney, Mr. Gary Jones, no longer practices criminal defense and in fact, is now employed with the Wayne County Prosecutor's Office and I believe it would

be a conflict of interest to have Mr. Jones represent him when is the People at this time." Sentencing Tr. at 3. Once he began working for the office that was prosecuting Petitioner, counsel had a conflict of interest that disqualified him from further representing Petitioner. Had counsel not withdrawn, Petitioner might have claimed a Sixth Amendment violation by counsel's continued representation despite the conflict. *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1353-1354 (6th Cir. 1993).

Moreover, Petitioner was not unrepresented at sentencing. The question before the court is whether the new attorney provided the effective assistance of counsel. To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.*

Petitioner argues that his new attorney was unfamiliar with his case, did not review the pre-sentencing information, and did not object to the scoring of the sentencing guidelines. He also argues that counsel should have objected to the prosecutor's statement that the victim almost died.

14

The record does not support these claims. Counsel stated that she had reviewed the presentence report and the guidelines. She stated that she had discussed the case with Petitioner. She also stated that she discussed the scoring of the guidelines with the prosecutor. Sent Tr. at 3-4. Petitioner's uncorroborated reference to medical records regarding the extent of the victim's injuries would be unavailing, even if it were true. Petitioner shot the victim multiple times with a handgun from close range. The argument that Petitioner's conduct nearly resulted in a death was well-founded and not objectionable.

Regarding the scoring of the sentencing guidelines, counsel successfully argued that two of the prior offense variables had been scored incorrectly. Sent Tr. at 4, 7. She also argued for the lowering of two other offense variables, but the objections were overruled. Sent Tr. at 4-6. Counsel also obtained an additional twenty-two days of jail credit. Sent Tr. at 8. Defense counsel argued for a middle-of-the-guidelines sentence, focusing on Petitioner's lack of a prior record, his stable home, his education, and lack of substance abuse problems. Sent Tr. at 9. These objections and arguments demonstrate that counsel was well-prepared for the sentencing hearing and did not perform deficiently.

As stated above, when Petitioner addressed the court at sentencing, he essentially attempted to justify his crime by attacking the victim's character and accusing him of committing crimes of his own. Sent Tr. at 12-13. This prompted the prosecutor to comment that he was continuing to display a dangerous attitude. The court agreed, stating that "it just seems like the defendant is trying to justify what he did. And there isn't any remorse." Sent Tr at 14. If Petitioner's sentence was adversely affected by anything that occurred at the sentencing hearing, it was likely his statement that made an impact, not the conduct of his attorney.

In light of this record, the Court concludes that Petitioner has not demonstrated that his counsel performed deficiently at sentencing. She was familiar with the case, she had prepared for the hearing, she met with Petitioner, and she made appropriate objections and arguments. Furthermore, because Petitioner has not shown a reasonable probability that his counsel's performance adversely affected his sentence, he has not demonstrated prejudice.

The state court adjudication of this claim did not involve an unreasonable application of clearly established Supreme Court law.

## IV. <u>Conclusion</u>

The Court will deny the Petition for Writ of Habeas Corpus. The Court will also deny Petitioner a Certificate of Appealability. Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason

would find it debatable whether the district court was correct in its procedural ruling. *Slack,* 529 U.S. at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny a Certificate of Appealability because Petitioner has failed to make a substantial showing of the denial of a federal constitutional right. Jurists of reason would not find this Court's resolution of Petitioner's claims to be debatable or that he should receive encouragement to proceed further. *Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

## V. Order

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED.**

IT IS FURTHER ORDERED that a Certificate of Appealability is DENIED.


        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: September 16, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 16, 2010, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager